Cunningham, P. J.
*210 Rieger, who was the plaintiff below, and Sebold, who was the defendant, owned adjoining farms in Weld County, which drew their water for irrigation purposes from the same source, or main ditch. Rieger’s land was watered by a lateral ditch which crossed Sebold’s land, and could be watered in no other way. Defendant insisted upon the right to take water for a portion of his land from the lateral which had been Constructed across it by Rieger for the use of the latter’s land. This led to serious difficulty, and various lawsuits, some criminal in their nature. Finally plaintiff brought this action to quiet his title in the lateral ditch, his wife being joined with him, for what purpose we are not advised. Se-bold answered, and in a cross-complaint asked that he be adjudged to- be a joint owner of the lateral ditch in question. From a judgment in favor of Rieger, excluding* Sebold from all right to the use of the lateral ditc'h, the latter brings the case here for review.
1. The facts, viewed - in the light most favorable tc Rieger, as it is our duty to regard them, show that the lateral ditch was constructed across the Sebold land in the early eighties, something like twenty-five years before Sebold acquired title to it, and during* all that time said lateral was used by Rieger and his predecessors in title, for irrigation of the latter’s land. Previous owners of the Sebpld land had used' water from the lateral ditch, but for the purpose of irrigating- only an acre or so of high ground near the Sebold house; at least two of the previous owners of the Sebold land, who had owned it for eight and three years, respectively, testified that they always understood that Rieger owned the ditch, and that they only*used water from it .with his Consent. Indeed, one of these owners testified that he had helped a former owner of the Rieger land construct the ditch, in 1882, in order to somewhat change its course, and that he gave the right o-f way to the then owner of the Rieger land. This witness had owned the Sebold land for eight years after the lateral ditch was thus constructed. Apparently, im *211 mediately upon acquiring the land, Sebold insisted upon using the ditch whenever he pleased, without the consent of Rieger, and upon something like twenty-five acres of land., There is no evidenc'e to show that the capacity of the lateral ditch is sufficient to .accommodate any considerable amount, of the Sebold land, without interfering with the rights or requirements of Rieger. Rieger’s right in the ditch, under the testimony as just related, was as complete as if his grantors had purchased the right of way, or acquired it by condemnation. The question of the right of, Sebold, under the statutes, to enlarge the ditch and thus avoid the construction of a parallel lateral (if one be nec'essary). is not involved in this case, and by nothing that we have said or shall say is it intended to question any right he may have to pursue the statutory course for acquiring a right to use the lateral ditch. If the ditch, as now constructed, is of sufficient capacity to serve the needs of Rieger, and also- the demands of Sebold,' the duty was upon Sebold to establish that fact by evidence, under proper pleadings; this he made no. attempt to do'. The learned trial judge found that it was practicable to irrigate all of the Sebold land without resort to- this lateral, which. had been originally constructed by a remote grantor of Rieger, and which for more than twenty-five years had been continuously used by the owners of the Rieger farm. Indeed, the evidence discloses that there was, at the time of the trial, a' parallel lateral owned and .controlled entirely by Sebold; and there is evidence .tending to prove that this lateral could, with a trifling expenditure of time, bé made to- cover all the Sebold land that Could be supplied from the Rieger lateral. Counsel for appellant rely upon sections 3170 and 3171 R. S., which manifestly are not applicable to-the case made; and they insist, "that an owner of the servient estate [Sebold, in this case] may always use an easement in any manner not inconsistent with the dominant use thereof.” If this be conceded, still the owner of the servient estate who seeks to' invoke this rule must prove that the use which he proposes to make of- the *212 easement is not inconsistent with, or injurious to, the dominant use thereof.
2. Complaint is made of the action of the trial court in denying the motion of defendant for a new trial, which motion was based largely upon newly discovered evidence. We think appellant’s, showing as to diligence in the- attempt to discover, before the first trial, the evidence he proposed to use on a second trial was insufficient under the following authorities: Barton v. Laws, 4 Colo. App. 212, 35 Pac. 284; Lee-Kinsey Imp. Co. v. Jenks, 13 Colo. App. 265, 57 Pac. 191.
Moreover, much of the testimony which appellant pro-fused to introduce was not important, since it went to matters not controverted on the trial, or to matters that might as well have been proven by other witnesses. All the witnesses that defendant seeks to use on a second trial lived in Jefferson County or in Denver, and apparently were permanently located. One of the most important witnesses, if we may judge by his affidavit, was the son of a witness who testified, on the trial in this case;'hence, his whereabouts, presumably, could have been easily ascertained by appellant had he inquired of the father, who- was present at the trial. By defendant’s own affidavit, which he filed in support of his motion for new trial, he knew of the importance of the testimony of all the witnesses that he desired to use, and knew their names. He does not set forth in his. affidavit what efforts he made, prior to- trial, to- locate them, nor did he make any effort to have the trial postponed for that or any other purpose. All but one of the witnesses which appellant claims to- have discovered were previous record owners of the land, and he states, in his affidavit for new'trial, that he took their names from the abstract of title to his land, before the trial, thus indicating- plainly that he appreciated the importance of their testimony which, so far as material, went to the question of the previous use and repair of the lateral ditch by prior owners of his land. Furthermore, within a very few days after appellant had lost his case, he was able to locate all of *213 the witnesses which he desires to use on a second trial. — 29 Cyc. 892. The trial was had on February 18th. On March 8th and 9th he hadi discovered all these witnesses.
“Motions for new trials, based upon newly discovered evidence, are regarded with suspicion and disfavor, and are left to the sound discretion of the trial judge whose action in denying such motions will not be reversed except for gross abuse of discretion.” — 29 Cyc. 881; Baylies. New Tr. & Apps., pp. 527-529; Spellings New Tr. & App. Proc., vol. 1, §§ 206-209-221; 14 Enc. Pl. & Pr., 790-799; Haynes New Tr. & Apps., p. 250, § 87; Arnold v. Skeggs, 35 Calif. 684; Baker v. Joseph, 16 Calif. 180.
In Baker v. Joseph, supra, it is said:
“The temptations, are so strong to make a favorable showing after a defeat in an angry and bitter controversy involving considerable interests, and the circumstances that the testimony has just been discovered, when it is too late to introduce it, so suspicious, that courts require the very strongest showing- of dilig'ence and all other facts nec’essary to give effect to the claim.”

Judgment Affirmed.